**HORIZON WEST, INC., et al.,**
**Plaintiffs—Appellants,**

v.

**ST. PAUL FIRE & MARINE**
**INSURANCE COMPANY,**
**Defendant—Appellee.**

No. 01–15942.
D.C. No. CV–00–00678–DFL(GGH).

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 2002.

Decided Sept. 3, 2002.

Before GOODWIN, HAWKINS, and
FISHER, Circuit Judges.

### MEMORANDUM *

Relators Foundation Aiding the Elderly and Marsha Baker filed a False Claims Act ("FCA") qui tam action in a separate suit against a group of nursing home operators (collectively "Horizon West"). The suit alleged that Horizon West had submitted false Medicare and Medicaid claims, and had misrepresented the quality of care at its facilities to maintain eligibility for payment under Medicare and Medicaid.

At the time the FCA action was filed, Horizon West had a professional liability

---

\* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

policy with St. Paul Fire and Marine Insurance Company ("St.Paul") containing an indemnification clause requiring St. Paul to compensate others for, inter alia, "injury or death resulting from ... the providing or failure to provide professional services." The policy also required that St. Paul defend Horizon West from suits alleging any such "covered claims, even if the suit is groundless or fraudulent." Horizon West tendered a defense request to St. Paul, and St. Paul refused on the basis that the policy did not apply to the claims raised in the FCA suit. Horizon West brought a breach of contract action against St. Paul, and the district court dismissed the claim concluding that St. Paul had no duty to defend because the FCA complaint did not raise "covered claims" within the meaning of the St. Paul policy. This appeal followed.

We have jurisdiction under 28 U.S.C. § 1291, and review de novo the dismissal of a claim on the basis of Fed.R.Civ.P. 12(b)(6). *See Monterey Plaza Hotel, Ltd. v. Local 483,* 215 F.3d 923, 926 (9th Cir. 2000). Absent a substantive choice of law provision, standard *Erie* rules apply and the court relies on California law to construe the St. Paul policy. *See Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The intent of the parties at the time of formation governs the interpretation of insurance contracts, and the court infers intent from the written contract itself. *See AIU Ins. Co. v. Superior Court,* 51 Cal.3d 807, 821–22, 274 Cal. Rptr. 820, 799 P.2d 1253 (Cal.1990). The court looks to the "clear and explicit" meaning of contract terms interpreted in their "ordinary and popular" sense, unless used technically or otherwise assigned special meaning. *Id.*

In determining whether a duty to defend exists, the court refers to the policy, the complaint and all facts known to the insurer. *See Montrose Chem. Corp. v. Superior Court,* 6 Cal.4th 287, 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (Cal.1993). "'[T]he duty to defend is so broad that as long as the complaint contains language creating the potential of liability under an insurance policy, the insurer must defend....'" *Zurich Ins. Co. v. Killer Music, Inc.,* 998 F.2d 674, 678 (9th Cir.1993) (quoting *CNA Casualty of California v. Seaboard Sur. Co.,* 176 Cal.App.3d 598, 606, 222 Cal.Rptr. 276 (Cal.Ct.App.1986)). Nonetheless, in a breach of contract action by the insured against its insurance company, "[t]he burden is on [the] insured to establish that the occurrence forming the basis of [the] claim is within the basic scope of insurance coverage." *Aydin Corp. v. First State Ins. Co.,* 18 Cal.4th 1183, 1188, 77 Cal.Rptr.2d 537, 959 P.2d 1213 (Cal.1998).

Horizon West first argues that the FCA suit involves a covered claim because the complaint alleges an economic injury to the United States (overpayment on Medicare and Medicaid claims) "resulting from" Horizon West's alleged failure to provide the professional care services for which it billed the government. Reading the FCA complaint and the liability policy together, we find this argument unavailing. The FCA injury does not "result from" Horizon West's failure to provide professional services, but from its submission of allegedly fraudulent bills and its alleged misrepresentation of care standards. If Horizon West had never submitted allegedly false bills or made allegedly false certifications to maintain eligibility for Medicare and Medicaid payment, there would be no basis for an FCA claim. The "providing or failure to provide professional services" is merely conduct underlying the FCA claim. While in a technical sense the bills and certifications would not have been false if Horizon West had actually provided the billed for services or had met

requisite eligibility standards, we believe the injury alleged in the FCA action "results from" the creation or presentation of false claims, not the fraudulent conduct underlying them. *See* 31 U.S.C. § 3729(a); *M/G Transport Servs., Inc. v. Water Quality Ins. Syndicate*, 234 F.3d 974, 978 (6th Cir.2000) (no duty to defend, under policy covering Clean Water Act violations, against FCA action alleging that insured had falsely concealed such violations); *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1266 (9th Cir.1996) (FCA liability "attaches ... to the claim for payment"). *Hopper* and *M/G Transport* both clearly distinguish between an FCA claim, and the conduct that underlies it, and support our rejection of Horizon West's strained reading of the "resulting from" policy language. Under the plain meaning of the St. Paul policy, nothing in the FCA complaint triggers a duty to defend.[1]

Second, Horizon West argues that the submission of Medicare and Medicaid bills is itself a "professional service" under the policy, and that a duty to defend the FCA claim arises because it concerns "injury ... resulting from ... the providing or failure to provide professional services." We do not agree. "Professional services" under the plain meaning of the policy do not extend to Horizon West's Medicare and Medicaid billing activities-"the bill is an effect of the service provided not part of the service itself." *See Medical Records Assoc., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 142 F.3d 512, 516 (1st Cir.1998) (relying on definition of "professional service" in *Bank of California v. Opie*, 663 F.2d 977, 981 (9th Cir.1981), to hold that billing activities of medical records processor were not professional ser-

vices and did not create duty to defend under professional liability policy).

AFFIRMED.

---

1. In reaching this conclusion, we do not disagree with Horizon West's argument that care to its patients constitutes "professional services." We do, however, disagree that examples in the FCA complaint of Horizon West's failure to provide patient services are anything more than a documentation of conduct underlying the FCA claim itself. The FCA claim alleges injury "resulting from" false billing and certification.