**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 18, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

ZURICH AMERICAN INSURANCE
COMPANY, successor in interest to
Zurich Insurance Company (U.S.
Branch),

        Plaintiff - Appellee,

CERTAIN UNDERWRITERS AT
LLOYD'S LONDON WHO
SUBSCRIBED TO POLICY NO. 150;
VALLEY FORGE INSURANCE
COMPANY, a Pennsylvania insurance
company,

        Plaintiffs-Counter-
        Defendants - Appellees,

 v.

O'HARA REGIONAL CENTER FOR
REHABILITATION, business form
unknown; CERTAIN
UNDERWRITERS AT LLOYD'S
LONDON SUBSCRIBING TO
POLICY NO. 150,

        Defendants,

and

Nos. 06-1357 and 06-1370

HEALTH CARE MANAGEMENT PARTNERS, LTD., doing business as O'Hara Regional Center for Rehabilitation; ORCR, INC., doing business as O'Hara Regional Center for Rehabilitation; SOLOMON HEALTH MANAGEMENT, LLC, doing business as Solomon Health Services, LLC; HERSCH "ARI" KRAUSZ; and DAVID SEBBAG, individuals; V. ROBERT SALAZAR, an individual,

        Defendants-Counter-
        Claimants-Appellants.

_____

VALLEY FORGE INSURANCE COMPANY, a Pennsylvania insurance company; ZURICH AMERICAN INSURANCE COMPANY, successor in interest to Zurich Insurance Company (U.S. Branch),

        Petitioners,              No. 06-515

v.

CERTAIN UNDERWRITERS AT LLOYD'S LONDON WHO SUBSCRIBING POLICY NO. 150; HEALTH CARE MANAGEMENT PARTNERS, LTD., doing business as O'Hara Regional Center for Rehabilitation; ORCR, INC., doing business as O'Hara Regional Center for Rehabilitation; SOLOMON HEALTH MANAGEMENT, LLC, doing business as Solomon Health

Services, LLC; HERSCH "ARI"
KRAUSZ; DAVID SEBBAG; V.
ROBERT SALAZAR, individuals,

Respondents.

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. NO. 05-cv-373-RPM)**

Submitted on the briefs.

Before **LUCERO**, **HOLLOWAY**, and **TYMKOVICH**, Circuit Judges.

**TYMKOVICH**, Circuit Judge.

The question presented in this consolidated case is whether general liability insurance policies trigger a duty to defend false billing claims made by the United States and the State of Colorado. O'Hara Regional Center for Rehabilitation argues that its insurance carriers should defend and indemnify it against the government's lawsuit under the False Claims Act and state common law claims. We hold that the applicable insurance policies do not cover these types of claims.

Having jurisdiction pursuant to 28 U.S.C. § 1291,[1] and finding no error, we AFFIRM.

## I. Background

### *Factual Background*

O'Hara is a long-term care facility in Denver that has been operated by various corporate entities.[2] O'Hara was licensed by the State of Colorado as a Class V rehabilitation nursing center, meaning it was certified to provide care to residents requiring a substantially greater quantity and quality of skilled nursing care compared to residents at ordinary nursing homes.

O'Hara entered into provider agreements with the United States and the State of Colorado under the Medicare and Medicaid programs. Pursuant to the provider agreements at issue here, Medicaid paid O'Hara for the specialized care

[1] We deny Valley Forge's motion to dismiss this appeal for lack of appellate jurisdiction. A judgment in a consolidated case is reviewable, even if other claims are pending, if the district court certified the judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. *See Trinity Broad. Corp. v. Eller*, 827 F.2d 673, 675 (10th Cir. 1987). Because the district court properly certified this judgment, we have jurisdiction.

[2] Three corporate entities were involved with O'Hara's operations. Health Care Management Partners conducted business as the O'Hara Regional Center for Rehabilitation from August 27, 1996, until June 1998. Defendant, ORCR, Inc., was incorporated on May 5, 1998, and conducted business as O'Hara from June 2, 1998 until approximately December 31, 2000. Defendant Solomon Health Management managed O'Hara from January 1, 1996, until June 2000.

During the times relevant to the underlying lawsuit, Hersch "Ari" Krausz and David Sebbag were O'Hara's owners and managers. V. Robert Salazar was an owner, officer, and manager for Solomon.

almost twice the reimbursement rate it paid other long-term care facilities in Colorado.

Following an audit of O'Hara's billing practices, the government concluded that O'Hara had submitted inflated invoices for patient services. Specifically, the government claimed O'Hara was inadequately staffed to meet the statutory and regulatory requirements provided for in the provider agreements. To recover the overpayments, it sued O'Hara in 2004, alleging that from September 1, 1997 through December 31, 2000, O'Hara "knowingly presented or caused to be presented claims for payment to the Medicare and Medicaid programs, for care, goods or services not rendered, that were inadequate or worthless, or that were rendered in violation of applicable statutes, regulations, and guidelines with a nexus to payment." R., Vol. 30, at 4940, ¶ 12. The government also claimed that O'Hara "systematically and routinely understaffed [the facility]" in violation of the provider agreements. R., Vol. 30, at 4940, ¶ 11. The government, however, did not seek damages on behalf of any patients who might have been harmed by the allegedly inadequate staffing levels.

The government brought a federal cause of action under the False Claims Act, 31 U.S.C. § 3729(a), and also asserted common law claims under Colorado law, including: payment by mistake of fact, unjust enrichment, common law fraud, restitution and disgorgement of illegal profits, and recoupment of overpayments. Following the commencement of the lawsuit, O'Hara tendered its

defense to three of its general liability insurance carriers for the years in question:

Zurich,[3] Valley Forge,[4] and Lloyd's.[5] O'Hara's theory of coverage was that the

_____

[3] *Zurich Policy.*

We will pay on behalf of any "insured" . . . [damages] that any "insured" becomes legally obligated to pay . . . because of injury to which this insurance applies. *The injury must be caused by a "medical incident"* . . . . "Medical incident" means *any act or omission in . . . the rendering or failing to render* . . . medical, surgical, dental, x-ray, or *nursing service* or treatment, or the furnishing of food or beverage in connection therewith; *any service* or treatment conducive to health or *of a professional nature* . . . .

R., Vol. 27, at 4667, 4757 (emphasis added).

[4] *Valley Forge Policy*.

Valley Forge denies that its umbrella policy includes professional liability coverage. O'Hara asserts, however, that the umbrella policy should be reformed to correspond to the coverage provided in the professional liability section of the Resident Health Care Package Policy. For the purposes of this appeal, we assume that the umbrella policy has been reformed to include the following professional liability provisions:

We will pay those sums that the insured becomes legally obligated to pay as damages *because of a "professional incident"* in the course of performing professional services for your resident health care facility . . . . *"Professional Incident" means . . . [a]ny act or omission in the furnishing or failure to furnish professional services* including the furnishing of food, beverages, medications or appliances in connection with such services and the postmortem handling of human bodies.

R., Vol. 28, at 4813, 4815 (emphasis added).

[5] *Lloyd's Policy.*

We will pay those sums that you become legally obligated to pay as

(continued...)

allegations of billing irregularities were encompassed by the "professional services" provision in each policy, which covered liability caused by errors and omissions in the furnishing or failure to furnish professional services—in this case, O'Hara's billing and staffing practices.

Valley Forge and Zurich accepted O'Hara's tender of defense under a reservation of rights, while Lloyd's disclaimed coverage altogether.

### *Procedural Background*

While the government's lawsuit proceeded in federal court, all three insurers filed separate complaints against O'Hara, seeking a declaratory judgment that they had no duty to defend or indemnify O'Hara. The insurers claimed the professional services provisions did not provide coverage for the claims of fraud

---

[5](...continued)

damages because of injury to which this insurance applies. . . . This insurance applies to injury only if . . . *[t]he injury is caused by a "medical incident"* . . . and [t]he injury arises out of the individual insured's profession as a licensed health care provider. . . . "Medical incident" means *any act or omission . . . [a]rising out of the providing of or failure to provide professional health care services. . . .*

\* \* \*

We will pay those sums that you become legally obligated to pay as damages because of injury to which this insurance applies. . . . This insurance applies to injury only if . . . *[t]he injury is caused by a "business entity incident"* . . . . "Business entity incident" means *any act or omission arising out of the providing of or failure to provide professional health care services . . . .*

R., Vol. 29, at 4906–07, 4912 (emphasis added).

made by the government in the underlying lawsuit. The district court consolidated the cases, and all parties filed cross-motions for summary judgment.

The district court granted the insurers summary judgment, and subsequently certified the judgment as final and appealable. This timely appeal followed.

## II. Standard of Review

We review de novo the grant of summary judgment to determine whether any genuine issues of material fact were in dispute and, if not, whether the district court correctly applied the substantive law at issue. *Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 792 (10th Cir. 1998). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In applying this standard, we view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party. *Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999). "Summary judgment is appropriate if the evidence is such that no reasonable jury could return a verdict for the nonmoving party." *Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1062 (10th Cir. 2002) (citation and quotation marks omitted). Because this case arises under our diversity jurisdiction, Colorado insurance law applies.

## III.  Discussion

O'Hara primarily makes two arguments in support of its theory that the professional services provisions of the insurance contracts provide coverage. First, it claims that the misconduct alleged by the government arose from O'Hara's negligent design and implementation of health care practices—namely, its failure to provide professionally adequate nursing or medical services. Second, it claims that its billing practices pursuant to the Medicare and Medicaid provider agreements also constitute professional services covered by the policies.

We find neither argument persuasive.[6]

### A.  Duty to Defend and Indemnify

Before turning to the specific language of the policies, several broad principles guide our assessment of the insurers' duty to defend and indemnify. Under Colorado law, an insurer's duty to defend is broader than the duty to indemnify.  If there is no duty to defend, then there is no duty to indemnify.  *See Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003) ("Because the duty to defend encompasses any potential claims raised by the facts and the duty to indemnify relates to the actual liability imposed, this court has

---

[6] O'Hara additionally contends the district court did not analyze the express language of the insurance policies at issue.  The insurers and O'Hara also disagree about whether various policy exclusions bar coverage.  Because we interpret the "professional services" language of the applicable policies as not covering the activities alleged in the government's complaint, it is unnecessary for us to address these arguments.

considered the duty to defend to be a broader concept than the duty to indemnify.").

When determining whether a duty to defend exists, a court applying Colorado law "look[s] no further than the four corners of the underlying complaint." *Id.* The facts alleged in the complaint, not the legal claims asserted by the plaintiff, determine the insurer's duty. *Gerrity Co. v. CIGNA Property & Cas. Ins. Co.*, 860 P.2d 606, 607 (Colo. Ct. App. 1993). If the complaint "alleges any facts that might fall within the coverage of the policy," then the insurer has a duty to defend the insured. *Hecla Mining Co. v. New Hampshire Ins. Co.*, 811 P.2d 1083, 1089 (Colo. 1991).

### B. Application

O'Hara argues the insurers have a duty to defend the company against the government's lawsuit because the government's allegations fall within the policies' broad coverage for professional nursing and medical services. The relevant coverage provisions are roughly the same for each of the insurers. They provide coverage where the insured causes injury by negligently (1) providing nursing or medical services or treatment; or (2) generally, providing professional services.

In O'Hara's view, these policies provide coverage because the government's complaint is premised on negligence in either (1) providing

-10-

professional nursing or medical services, or (2) processing and submitting Medicare and Medicaid forms.

### 1. Professional Nursing or Medical Services

No one disputes the insurance policies at issue cover errors or omissions made in the furnishing or failing to furnish professional nursing or medical services. The dispute centers on O'Hara's view that the government's case is predicated on O'Hara's failure to provide *adequate* professional nursing services. According to O'Hara, the thrust of the government's argument is that it failed to adequately staff the facility, thus breaching the staffing requirements of the provider agreements. But for the inadequate staffing levels, O'Hara would otherwise have been in compliance with the provider agreements.[7]

We disagree. The government's injury was not caused by O'Hara's failure to provide professional services, but instead resulted from O'Hara's submission of false and fraudulent claims for reimbursement. Specifically, the crux of the government's claim is that O'Hara promised to provide a certain level of patient care; it represented to the government it provided the contractually agreed levels of care; but, in fact, it did not provide the agreed services. As we read the

---

[7] Colorado law requires more than a "but for" relation between the covered activity and the injury. "[T]he claimant must [also] show that the [covered activity] and the injury are directly related or inextricably linked so that no independent significant act or [omission] interrupted the 'but for' causal chain between the covered [activity] and the injury." *State Farm Mut. Auto. Ins. Co. v. Kastner*, 77 P.3d 1256, 1264 (Colo. 2003); *see infra* Part III.B.1 (*Lloyd's Policy*).

government's cause of action, the problem was not the actual level of services provided to O'Hara's patients, but rather that O'Hara billed for services it did not provide—namely, enhanced services. This violates the provider agreements.

Several cases support this analysis. The insurers, for example, point to a substantially similar case in which the court rejected a nursing home's argument that inadequate staffing could be covered under the professional services provision. *Horizon West, Inc. v. St. Paul Fire & Marine Ins. Co.*, 214 F. Supp. 2d 1074 (E.D. Cal. 2002), *aff'd*, 45 F. App'x 752 (9th Cir. 2002). In that case, the insurance policy stated, "[w]e'll pay amounts you and others protected under this agreement are legally required to pay to compensate others for injury or death resulting from . . . the providing or failure to provide professional services while this agreement is in effect." *Horizon West*, 214 F. Supp. 2d at 1076. As in the present case, the plaintiff alleged the facility falsely and fraudulently submitted Medicare and Medicaid claims for services it did not provide. In concluding the insurer did not have a duty to defend, the court found the insured's "injuries"—the possible reimbursement of fraudulent payments it received—were caused by the company's billing practices rather than its nursing services.[8]

---

[8] O'Hara argues that *Horizon West* is not persuasive authority. First, O'Hara suggests *Horizon West* relied on a definition of professional services that has not yet been followed in Colorado. This definition, however, was first articulated in *Marx v. Hartford Accident & Indemnity Co.*, 157 N.W.2d 870, 871–72 (Neb. 1968), and is the most widely used definition used by courts throughout the country. *See* 23 *Appleman on Insurance* § 146.3[A] (discussing

(continued...)

-12-

The decision in *Horizon West* is consistent with the approach followed in other jurisdictions that have considered whether liability policies cover claims under the False Claims Act or related causes of action. For example, in *M/G Transport Services, Inc. v. Water Quality Insurance Syndicate*, 234 F.3d 974 (6th Cir. 2000), a subcontractor signed a contract with the United States government agreeing to transport coal to the Tennessee Valley Authority. As a condition of the contract, the subcontractor agreed to comply with the Clean Water Act. *Id.* at 975–76. A False Claims Act suit was subsequently filed against the subcontractor, alleging it falsified records to hide violations of the Clean Water Act so it could obtain payment from the United States. The subcontractor then sued its insurer, alleging the insurer had a duty to defend the company against the lawsuit because the policy covered any amounts paid "by reason of or with respect to" liability to the United States for violations of the Clean Water Act. *Id.* at 977–78. The Sixth Circuit rejected the subcontractor's arguments for the following reasons:

[8](...continued)
authority). We conclude Colorado's courts would similarly adopt this definition.

O'Hara also argues *Horizon West* is factually distinguishable because Zurich, Valley Forge, and Lloyd's polices provide broader coverage. We reject this argument as explained below. Finally, O'Hara notes that *Horizon West* involved a qui tam action brought by a private party, while the present case involves claims brought by the government. It is not clear why this fact would affect the policies' coverage, and, in any event, we reject this argument.

> M/G's arguments are *thinly disguised attempts to bootstrap liability for FCA violations into the coverage provided by the environmental pollution policies*. Under these circumstances, we cannot conclude that M/G's liability . . . was by reason of, or with respect to, liability to the United States for cleanup costs under the Clean Water Act. An FCA action is not converted into a Clean Water Act action simply because a violation of the Clean Water Act is a predicate to establishing the falsity of a claim, or may be used as a measure of damages under the FCA.

*Id.* at 978.

We similarly reject O'Hara's attempt to bootstrap liability for False Claims Act violations into the coverage provided by the professional liability policies issued by Zurich, Valley Forge, and Lloyd's. *See also Hampton Med. Group v. Princeton Ins. Co.*, 840 A.2d 915, 917–18 (N.J. Super. Ct. App. Div. 2004) (holding insurer—which provided psychiatrists a professional liability policy covering "injur[ies] caused by a 'medical incident' arising out of your supplying or failure to supply professional services"—did not have a duty to defend the psychiatrists against a lawsuit alleging they billed Blue Cross/Blue Shield for services they never provided).

O'Hara nonetheless makes additional arguments suggesting the insurance policies should be broadly interpreted to cover the government's fraud allegations. In essence, O'Hara argues that even if it received sums of money for services it never provided, the insurance companies should be on the hook when it is required to disgorge the payments. After reviewing the language of the three

applicable policies, we disagree. The logic of *Horizon*, *M/G Transport Services*, and *Hampton Medical Group* applies equally here.

### *Zurich's Policies*

O'Hara argues Zurich's policies provide especially expansive coverage because the language covers injuries *related* to the rendering of nursing services, not just injuries *caused* by the failure to furnish such services. The policies explain,

> Any such act or omission, together with all *related acts or omissions* in the furnishing of or failing to furnish such services to any one person shall be considered as one "medical incident."

R., Vol. 27, at 4667, 4757 (emphasis added). Based on this language, O'Hara argues Zurich has a duty to defend because the government's suit is related to its facility's alleged failure to provide adequate nursing services.

But in making this argument, O'Hara takes the phrase "related acts or omissions" out of context. When the sentence is read in its entirety, it is clear that the purpose of the cited clause is not to define or expand the scope of the policy's coverage to include any activity related to the failure to furnish professional services—such as billing the government for services not provided. Instead the clause merely clarifies that one "medical incident" can involve several covered acts or omissions.

### *Valley Forge's Policy*

-15-

O'Hara also argues Valley Forge's policy provides broad coverage for inadequate staffing. In particular, the policy "extends coverage to professional services performed *for your resident health care facility*." Aplt. Opening Br. 34. O'Hara's description of the policy, however, is incomplete. The policy requires a causal connection between the injury alleged and a covered activity. The policy states "we will pay those sums that the insured becomes legally obligated to pay as damages *because of* a 'professional incident' in the course of performing professional services for your resident health care facility." R., Vol. 28, at 4813 (emphasis added).

Because no causal connection exists between the failure to perform nursing services and the damages alleged by the government—i.e., over-billing—Valley Forge's policy does not cover the underlying lawsuit.

### *Lloyd's Policy*

Finally, O'Hara argues Lloyd's policy should be interpreted broadly because it includes the phrase "arising out of" within the definitions of "medical incident" and "business entity incident." O'Hara suggests the Colorado Supreme Court has interpreted the phrase as creating a "but-for" test. *See, e.g.*, *Northern Ins. Co. v. Ekstrom*, 784 P.2d 320, 323 (Colo. 1989). Because the injury alleged by the government would not have occurred but for the nursing facility's substandard care, the argument goes, this test is satisfied.

-16-

This argument is misplaced. The Colorado Supreme Court subsequently clarified that the phrase "arising out of" requires more than a mere "but for" relation between the injury and the covered activity. *See State Farm Mut. Auto. Ins. Co. v. Kastner*, 77 P.3d 1256, 1264 (Colo. 2003). "[T]he claimant must [also] show that the [covered activity] and the injury are directly related or inextricably linked so that no independent significant act or [omission] interrupted the 'but for' causal chain between the covered [activity] and the injury." *Id.* O'Hara's false representations to the government here constituted an independent act that interrupted the causal chain between O'Hara's failure to furnish adequate nursing services and the government's injury—the overpayment of claims.

Because the alleged failure to furnish adequate nursing services is not "directly related" or "inextricably linked" to the injury claimed by the government, O'Hara failed to demonstrate that the insurers had a duty to defend.

### 2. *Billing Practices*

O'Hara alternatively argues the insurers had a duty to defend the company because its billing practices constitute professional services covered by the policies.

Professional liability policies do not insure against all liability incurred by the insured. *E.g. Medical Records Assocs., Inc. v. Am. Empire Surplus Lines Ins. Co.*, 142 F.3d 512, 513 (1st Cir. 1998) (applying Massachusetts law); 23

-17-

*Appleman on Insurance* § 146.3[A] (2d ed., 2003).  Instead, such policies often use the term "professional services" or an equivalent phrase to describe the scope of the coverage.  23 *Appleman on Insurance* § 146.3[A].  Zurich's policies refer to "any service . . . of a professional nature."  R., Vol. 27, at 4667, 4757.  Valley Forge's policy uses the phrase "professional services."  R., Vol. 28, at 4815.  And, Lloyd's policy refers to "professional health care services."  R., Vol. 29, at 4912–13.  The terms are not defined in any of the policies, and Colorado courts have not clarified the meaning of the phrase.

The definition of professional services most frequently relied on by courts was first set forth in *Marx v. Hartford Accident & Indemnity Co.*, 157 N.W.2d 870, 871–72 (Neb. 1968); 23 *Appleman on Insurance* § 146.3[A].  "A 'professional' act or service is one arising out of a vocation, calling, occupation, or employment involving specialized knowledge, labor, or skill, and the labor or skill involved is predominantly mental or intellectual, rather than physical or manual."  *Marx*, 157 N.W.2d at 872; *see also Noyes Supervision, Inc. v. Canadian Indem. Co.*, 487 F. Supp. 433, 438 (D. Colo. 1980) (applying Colorado law) (relying in part on *Marx* to determine the meaning of the term "professional services" in an insurance contract); *cf. Titan Indem. Co. v. Travelers Prop. Cas. Co. of Am.*, 181 P.3d 303, 307–08 (Colo. Ct. App. 2007) (declining to rely on *Marx* and other cases in determining the meaning of the term "professional services" because the phrase was defined in the policy).

Although processing Medicare and Medicaid claims may be difficult and time consuming, the activity does not characterize a "professional service." The court in *Horizon West* reached a similar conclusion. *Horizon West*, 214 F. Supp. 2d at 1079 ("Horizon West . . . fails to offer any legal authority that submission of Medicare and Medicaid claims constitutes anything other than 'ordinary activities achievable by those lacking the relevant professional training and expertise.'" (quoting *Medical Records*, 142 F.3d at 514 (applying Massachusetts law)).[9]

In fact, courts generally have concluded the preparation of bills or invoices does not qualify as professional services. 23 *Appleman on Insurance* § 146.3[B] (collecting cases); *see, e.g.*, *Medical Records*, 142 F.3d at 515–16; *see also Cohen v. Empire Cas. Co.,* 771 P.2d 29, 31 (Colo. Ct. App. 1989). For example, in *Medical Records*, a law firm sued a medical records processing business, alleging the company overcharged for copies. The company referred the claim to its insurer, arguing the applicable policy covered "[l]oss which the Insured shall become legally obligated to pay . . . by reason of any actual or alleged negligent act, error or omission committed in the rendering or failure to render the Professional Services stated in the Declarations." *Medical Records*, 142 F.3d at

---

[9] Nor has O'Hara created a material fact dispute by proffering an affidavit claiming that Medicare and Medicaid billing practices are difficult and complex. Preparing bills is an ordinary activity of business, and, while federal regulations may be complex, such an activity does not constitute a part of the professional services of a nursing home.

514. The Declarations only identified the professional services as "Medical Records Processor." *Id.*

In determining whether the policy covered the underlying lawsuit, the court relied in part on the definition of professional services articulated in *Marx*. *Id.* at 515 (citing *Marx*, 157 N.W.2d at 872). It concluded the insurer did not have a duty to defend the company because setting a price for photocopies and producing accurate invoices did not require the level of particularized knowledge necessary to be characterized as a professional service. *See id.* at 516. The processing of Medicare and Medicaid claims likewise does not require a specialized professional service.

Nor does Colorado law support a professional malpractice theory. For example, in a case involving a claim of a lawyer refusing to pay for the legal services of co-counsel, the Colorado Court of Appeals considered whether such a claim could be covered as "arising out of any act or omission of the Insured in rendering or failing to render *professional services* for others in the Insured's capacity as a lawyer." *Cohen*, 771 P.2d at 30 (emphasis added). Although the court did not define the phrase "professional services," it explained billing practices were not covered by the policy,

> Expenses incurred by a lawyer for maintaining his office, hiring secretaries, investigators, consultants, expert witnesses, and associates are incidental to a lawyer's *business*. His failure to pay either the cost of, or the reasonable value for, such *business* expenses cannot rationally be deemed a failure to provide legal advice or

-20-

assistance to others *in his professional capacity as a lawyer*.

*Id.* at 31.

In much the same way, O'Hara's billing practices are incidental to its business as an operator of a nursing facility. O'Hara's failure to file accurate reimbursement claims with the government is not a failure to provide services in its professional capacity.

Because the underlying lawsuit does not allege an injury caused by an activity covered by the insurance policies at issue in this case, the insurers do not have a duty to defend or indemnify O'Hara.

### IV. Additional Motions

Valley Forge and Zurich also filed a petition for permission to appeal the district court's order declaring that Valley Forge and Zurich are entitled to reimbursement for defense costs they have expended in defending O'Hara. We dismiss the interlocutory appeal as improvidently granted because prevailing parties generally lack standing to appeal a district court order. *See Nicodemus v. Union Pac. Corp.*, 318 F.3d 1231, 1234 (10th Cir. 2003). The insurers are entitled to pursue any remaining claims against O'Hara on remand.[10]

We also deny O'Hara's motion to certify to the Colorado Supreme Court the question of whether Valley Forge and Zurich are entitled to recoup costs. This court "generally will not certify questions to a state supreme court when the

---

[10] Because we dismiss the interlocutory appeal, no filing fee is due.

-21-

requesting party seeks certification only after having received an adverse decision from the district court." *In re Midpoint Development, LLC*, 466 F.3d 1201, 1207 (10th Cir. 2006). Finally, we grant Lloyd's motion to correct its answer brief.

## V.  Conclusion

For the reasons stated above, we AFFIRM. The case is remanded to the district court for further proceedings consistent with this opinion.