FILED
United States Court of Appeals
Tenth Circuit

August 16, 2010

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

VALLEY FORGE INSURANCE
COMPANY, a Pennsylvania insurance
company; ZURICH AMERICAN
INSURANCE, successor in interest to
Zurich Insurance Company (U.S.
Branch),

    Plaintiffs-Appellees/
    Cross-Appellants,

v.

HEALTH CARE MANAGEMENT
PARTNERS, LTD., d/b/a O'Hara
Regional Center for Rehabilitation;
ORCR, INC., d/b/a O'Hara Regional
Center for Rehabilitation; SOLOMON
HEALTH MANAGEMENT, LLC,
d/b/a Solomon Health Services, LLC;
HERSCH "ARI" KRAUSZ; DAVID
SEBBAG; V. ROBERT SALAZAR,

    Defendants-Appellants/
    Cross-Appellees.

Nos. 09-1251, 09-1263
09-1264, 09-1265
09-1278, 09-1279

---

**Appeal from the United States District Court
for the District of Colorado
(D.C. Nos. 1:05-CV-374-RPM and 1:05-CV-835-RPM)**

---

Richard B. Podoll of Podoll & Podoll, P.C., Greenwood Village, Colorado
(Gregory G. Sapakoff of Podoll & Podoll, P.C., Greenwood Village, Colorado; and
T. Jeffrey Fitzgerald and Marie Elizabeth Williams of Faegre & Benson, LLP,
Denver, Colorado, with him on the briefs) for Defendants-Appellants/Cross-
Appellees.

J. Robert Hall of Meckler Bulger Tilson Marick & Pearson LLP, Chicago, Illinois (Michael M. Marick of Meckler Bulger Tilson Marick & Pearson LLP, Chicago, Illinois; Michael L. O'Donnell and Sean D. Baker of Wheeler Trigg O'Donnell LLP, Denver, Colorado; Patrick W. Kennison, Jr. of Kutak Rock LLP, Omaha, Nebraska; and Kelly Sue Kilgore of Kutak Rock LLP, Denver, Colorado, with him on the brief) for Plaintiffs-Appellees/Cross-Appellants.

Before **GORSUCH, McKAY,** and **CUDAHY**[*], Circuit Judges.

**GORSUCH**, Circuit Judge.

When the government sued them for allegedly engaging in Medicare and Medicaid fraud, the appellants asked their insurance companies to provide them with a defense. The insurers promptly and unequivocally disputed their obligation to do so. Still, they agreed to supply a defense, subject to a reservation of rights permitting them to challenge their duty to defend at a later stage and, if successful in that challenge, to recoup the costs they incurred in defending the appellants.

Consistent with their reservation of rights, the insurers eventually brought this lawsuit seeking two things: a declaratory judgment that they had no duty to provide the appellants with a defense under the terms of the applicable insurance policies, and reimbursement of the defense costs they had already expended. The district court ruled that the insurers had no duty to defend, and this court affirmed.

_____

[*] Honorable Richard D. Cudahy, U.S. Senior Circuit Judge, Seventh Circuit, sitting by designation.

- 2 -

Later, on remand, the district court awarded the insurers full reimbursement of their defense costs. Now on appeal once more, the appellants challenge the propriety of this latest ruling. The insurers cross-appeal, submitting that the district court erred in declining to add prejudgment interest to their awards. Finding none of the parties' various challenges to the district court's judgment persuasive, we affirm.

I

A

In approaching the case before us, a little background about its parent lawsuit helps. Following an audit of the billing practices of O'Hara Regional Center for Rehabilitation, a long-term care facility in Denver, federal and state officials came to the view that various individuals and entities associated with the Center had provided substandard care to Medicare and Medicaid patients, and had submitted false and fraudulent claims for the care they did provide. Eventually, the relevant governmental agencies brought suit. *See United States of America, et al. v. Health Care Mgmt. Partners, Ltd., et al.*, No. 04-CV-2340-REB-BNB (D. Colo. 2004). The defendants included Health Care Management Partners, Ltd.; ORCR, Inc.; Solomon Health Management, LLC; Hersch "Ari" Krausz; David Sebbag; and V. Robert Salazar (collectively, the O'Hara Defendants).

In short order, the O'Hara Defendants contacted their insurance carriers — Zurich, Valley Forge, and certain underwriters at Lloyd's of London — demanding

that the carriers provide them with a defense. Lloyd's refused to defend the O'Hara Defendants, disclaiming coverage. Zurich and Valley Forge, too, took the position that their policies didn't afford coverage but, even so, they agreed to provide a defense. At the same time, Valley Forge and Zurich reserved the right to seek reimbursement for all expenses they incurred in defending the O'Hara Defendants, should a court later agree that their policies imposed on them no duty to defend.

To reserve its rights, Valley Forge sent the O'Hara Defendants a letter stating that, while it "does not believe that its defense obligations have been triggered, it has decided for now to provide a defense . . . subject to a reservation of rights, [including] . . . the right to seek a judicial determination of its coverage obligations in advance of the conclusion of the underlying matter, and to recover defense costs it has spent in the event it is determined that it had no defense obligation." App. Vol. 11 at 2607-08. Zurich sent a similar letter, saying it "reserves its right to deny, reject, contest or disclaim any duty to defend [the O'Hara Defendants]"; "to withdraw from the defense of the . . . [l]awsuit in the event it is determined there is no coverage; and to seek and obtain reimbursement of any damages and/or defense[] costs [it] paid." App. Vol. 11 at 2579. The O'Hara Defendants accepted the defense the insurance companies supplied and apparently never objected to the reservation of rights letters they received. It also appears the O'Hara Defendants were generally aware of the expenses accrued in

defending them because, for example, they received copies of their counsels' litigation budgets.

B

That brings us to the case now before us. While the government's lawsuit against the O'Hara Defendants carried on, Zurich, Valley Forge, and Lloyd's filed complaints against the O'Hara Defendants, seeking declarations that they had no duty to defend the O'Hara Defendants against the government's claims. Zurich and Valley Forge also sought reimbursement of the defense costs that by then they had already expended. The district court consolidated these various cases and, ultimately, issued a declaratory judgment holding that the government's claims against the O'Hara Defendants were not covered by the relevant insurance policies, so there was no duty to defend (or indemnify). On appeal, this court affirmed the district court's declaratory judgment and remanded the matter back to the district court to resolve what, if any, amounts Zurich and Valley Forge should recoup for the defense costs they had advanced. *See Zurich Am. Ins. Co. v. O'Hara Reg'l Ctr. for Rehab.*, 529 F.3d 916 (10th Cir. 2008).

After extensive summary judgment briefing on remand, the district court held Zurich and Valley Forge entitled to recoup all of the costs they had incurred on behalf of the O'Hara Defendants. The district court rejected, however, Zurich and Valley Forge's claim that they were also entitled to prejudgment interest on those recovered sums. The O'Hara Defendants now appeal, asking us to hold that

the district court erred in granting summary judgment to the insurance companies. For their part, Zurich and Valley Forge cross-appeal the district court's denial of prejudgment interest. We first address the O'Hara Defendants' appeal, before turning to Zurich and Valley Forge's cross-appeal.

II

The O'Hara Defendants' appeal proceeds in two essential movements. First, they say, an insurer cannot recoup the defense costs it expended under a reservation of rights letter unless a right of recoupment is also expressly mentioned in the parties' underlying insurance policy. And, they say, the insurance policies they signed with Valley Forge and Zurich contain no language discussing the recoupment of defense costs in these circumstances. Accordingly, the O'Hara Defendants conclude, Zurich and Valley Forge may not, as a matter of law, recover the defense funds they spent — even though, as the district court and this court have already held, the insurance contracts never required them to provide a defense in the first place. Second, assuming the insurers are lawfully entitled to recoup *something*, the O'Hara Defendants argue that genuine issues of material fact still remain over the amount the insurers are owed, thus precluding the entry of summary judgment.

A

In the O'Hara Defendants' view, Zurich and Valley Forge cannot recover the defense costs they expended for the simple reason that no provision in the parties' insurance contracts contemplates that possibility. This result pertains, the O'Hara Defendants argue, even though the insurance companies did send "reservation of rights" letters when they agreed to provide a defense — and even though the O'Hara Defendants do not dispute the clear import of those letters, apparently never objected to them at the time, and accepted the defense their insurers provided. This result pertains because, in the O'Hara Defendants' view, "[a]llowing an insurer to recover defense costs expended under a reservation of rights, without a contractual basis in its insurance policy providing a right of recoupment, would be contrary to Colorado law and public policy." Opening Br. 23. In support of their position, the O'Hara Defendants point us to *General Agents Insurance Co. of America, Inc. v. Midwest Sporting Goods Co.,* 828 N.E.2d 1092 (Ill. 2005), where the Illinois Supreme Court reasoned that an insurer's reservation of rights letter could only reserve the rights contained within an insurance policy and could not create new rights. *Id.* at 1102-03; *see also Shoshone First Bank v. Pac. Employers Ins. Co.*, 2 P.3d 510 (Wyo. 2000); *Gen. Star Indem. Co. v. V.I. Port Auth.*, 564 F. Supp.2d 473 (D.V.I. 2008).

Zurich and Valley Forge respond that Colorado has taken a different tack than Illinois and the other jurisdictions cited by the O'Hara Defendants. To

balance the interests of insureds and insurers, Zurich and Valley Forge say, Colorado law *requires* an insurer to pay defense costs, but at the same time provides the insurer with this assurance: if it pays defense costs pursuant to a reservation of rights letter, as Zurich and Valley Forge did here, the insurer may later seek and obtain recoupment of its defense costs if the facts at trial prove the claim against the insured wasn't covered by the policy. Zurich and Valley Forge submit that this much can be discerned from a pair of Colorado Supreme Court decisions, *Hecla Mining Co. v. New Hampshire Insurance Co.*, 811 P.2d 1083 (Colo. 1991), and *Cotter Corp. v. American Empire Surplus Lines Insurance Co.*, 90 P.3d 814 (Colo. 2004). And, the insurers suggest, *Hecla* and *Cotter* are hardly anomalies; at least some other states take the same view. *See, e.g., United Nat'l Ins. Co. v. SST Fitness Corp.*, 309 F.3d 914 (6th Cir. 2002) (applying Ohio law); *Colony Ins. Co. v. G & E Tires & Serv., Inc.*, 777 So. 2d 1034 (Fla. Dist. Ct. App. 2000).

From all this, it can be fairly gleaned that state courts are divided on how best to handle insurers' recoupment claims. The O'Hara Defendants urge us to adopt their view, and that of the Illinois courts, as the sounder one. But this case comes to us through diversity jurisdiction, 28 U.S.C. § 1332, and the parties agree Colorado's substantive law controls its resolution. So the question we must answer isn't what we think to be the better rule of law, but what Colorado law says on the subject. And on that score, Zurich and Valley Forge have the sounder view.

*Hecla* and *Cotter* clearly indicate that the Colorado Supreme Court recognizes an insurer's entitlement to reimbursement of defense costs in the event it is later determined the insurer did not have a duty to defend. And *Hecla* and *Cotter* both premise the insurer's entitlement to reimbursement on its having reserved that right when it provided a defense to its insured, not on any reimbursement provision in the insurance contract itself.

In *Hecla*, the Colorado Supreme Court held as a matter of state law that, where the allegations in a complaint against an insured state a claim that "potentially or arguably [falls] within the policy coverage," "the insurer *must* accept the defense of the claim." 811 P.2d at 1089 (emphasis added and quotation marks omitted). This is so, the court emphasized, even if the "duty to defend is not apparent from the pleadings in the case against the insured." *Id.* "[F]or an insurer who believes that it is under no obligation to defend," the court explained, the "appropriate course of action" "is to provide a defense to the insured under a reservation of its rights to seek reimbursement should the facts at trial prove that the incident resulting in liability was not covered by the policy, or . . . file a declaratory judgment action after the underlying case has been adjudicated." *Id.* *Hecla* thus clearly directs insurers to provide a defense under a reservation of rights. And it gives no intimation that an insurer must also include a reservation of rights in its underlying insurance contract.

The O'Hara Defendants protest that *Hecla* spoke only of permitting an insurer to *seek* reimbursement based on a reservation of rights letter. This, they say, is different than recognizing an *entitlement* to reimbursement. And so, they argue, it remains an open question whether an insurer must also reserve the right of recoupment in its underlying insurance contract in order to recover its defense costs. But this strikes us as an unduly parsimonious reading of *Hecla*. The *Hecla* court expressly considered and contemplated a condition to reimbursement — a reservation of rights letter. The fact that it did not mention any other comparable condition — such as specific contractual language — cannot be so easily ignored. It's the dog that didn't bark. *Cf. Chisom v. Roemer*, 501 U.S. 380, 396 n.23 (1991) (noting that silence on the issue can be probative evidence of legislative intent); *United States v. Lopez*, 518 F.3d 790, 798 n.2 (10th Cir. 2008); Sir Arthur Conan Doyle, *Silver Blaze, in* The Memoirs of Sherlock Holmes (1894).

More clues confirming the point appear in Hecla's successor, *Cotter.* There, the Colorado Supreme Court explained that

> [I]n *Hecla* . . . [w]e attempted to balance the interest of both the insurers and insureds by *ensuring* that the broad rule basing the duty to defend on the complaint *will not* require insurers to pay defense costs if coverage ultimately does not exist under the policies . . . . [W]e . . . attempted to *create a remedy* for insurers that provided defenses to insureds when coverage ultimately did not exist.

90 P.3d at 828 (emphasis added). *Cotter* thus again strongly suggests Colorado recognizes a pair of interlocking legal entitlements. On the one hand, in an effort

to protect insureds, Colorado law imposes a duty on insurers to advance funds toward the defense of claims that may ultimately turn out not to be covered under the insurance policies. *Id.* at 827. On the other hand, the state recognizes a corresponding legal remedy, allowing insurers to obtain reimbursement when coverage is found not to exist, so long as they reserve (at least by letter) the right to do so. *Id.* at 828. In this way, this pair of complementary entitlements is intended "to balance the interests of both the insurers and the insureds" by ensuring that insureds will receive a defense and that insurers won't be left holding the bag if it turns out they had no duty to provide one. *Id.* Nothing in these rules or their underlying rationales appears to turn on whether a reservation of rights clause does or doesn't appear in a particular insurance contract.

The O'Hara Defendants reply that *Hecla* and *Cotter*'s discussions about the legal rights and remedies of insureds and insurers are, at best, no more than *dicta*. But even supposing that's a fair characterization, our task in diversity cases is to predict how the state supreme court would rule. *See Vanover v. Cook*, 260 F.3d 1182, 1186 (10th Cir. 2001). And when we carry out that duty, Colorado Supreme Court *dicta*, which represents the court's own comment on the development of Colorado law, surely can be instructive. *See Carl v. City of Overland Park, Kan.*, 65 F.3d 866, 872 (10th Cir. 1995). This is particularly true where, as here, the *dicta* is recent, clear, and repeated. *Cf. Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996) (discussing United States Supreme Court *dicta*). So it is that we

agree with the district court that the Colorado Supreme Court's statements in

*Hecla* and *Cotter*, even if *dicta*, unmistakably indicate that Colorado law would

allow an insurer to recover defense costs from its insured where it reserved the

right to do so by letter, regardless whether the insurer also reserved that right in

the underlying insurance policy itself.[1]

Perhaps seeing the writing on the wall, the O'Hara Defendants reply that, at

the very least, *Hecla* and *Cotter* require an insurer to wait until *after* the

underlying case against the insured is resolved before seeking a declaratory

judgment that it owes no duty to defend and deserves reimbursement. And, they

add, Zurich and Valley Forge failed to do this much; instead, the insurers sought a

declaration that they had no duty to defend while the underlying Medicare-

Medicaid fraud suit against the O'Hara Defendants was still pending. This failure

to follow the procedure outlined in *Hecla* and *Cotter*, the O'Hara Defendants

submit, bars Zurich and Valley Forge from recouping their defense costs.

Again, we cannot agree. Zurich and Valley Forge emphasize that the

O'Hara Defendants didn't raise this particular argument in the district court and

ask us to disregard it on that basis. But whether the failure to present this

---

[1] The O'Hara Defendants ask us to certify to the Colorado Supreme Court the reimbursement question they raise in this appeal. Because, as we explain above, *Hecla* and *Cotter* provide clear guidance on this question, we deny that request. *See Pino v. United States*, 507 F.3d 1233, 1236 (10th Cir. 2007) ("When we see a reasonably clear and principled course, we will seek to follow it ourselves.").

argument earlier amounts to waiver or forfeiture, we need not decide.  We also don't have to decide the question, unbriefed by the parties but surely lurking behind the scenes, whether a state law rule purporting to prevent parties from seeking a declaratory judgment until a specified time could bind a federal district court and limit its congressionally-granted authority under the Declaratory Judgment Act.  *See Farmers Alliance Mut. Ins. v. Jones*, 570 F.2d 1384, 1386 (10th Cir. 1978); *Addison Ins. Co. v. Rippy*, No. 08-237, 2009 WL 723322 (D. Colo. Mar. 18, 2009) (unpublished).  All this is because the argument itself rests on a mistaken premise.  Even under Colorado law, it isn't *always* the case that an insurer must wait for the underlying lawsuit to end before seeking a declaration concerning its duty to defend.  The Colorado Supreme Court has said that it is "within the sound discretion of the trial court" whether to permit an insurer to seek such a declaration before the underlying litigation against the insured has come to an end.  *Constitution Assocs. v. N.H. Ins. Co.*, 930 P.2d 556, 561 (Colo. 1997).  In making such a determination, the Colorado Supreme Court has emphasized that the "potential prejudice" to the insured is a primary consideration.  *Id.* at 562.  For this reason, a declaratory judgment action *is* permissible if it concerns issues that are "independent of and separable from those in the underlying action," because, as the court explained, it then would not "unduly prejudice the insured in the underlying action."  *Id.*

Despite this clear rule, the O'Hara Defendants have not identified any prejudice they suffered from the alleged prematurity of Zurich's and Valley Forge's suits. Neither do the O'Hara Defendants dispute that the insurers' declaratory judgment actions were "independent of and separable from" the government's suit against them. *Id.* In this light, then, we can discern no possible error on the part of the district court in permitting the declaratory judgment actions to proceed before resolution of the underlying suit, and then awarding Zurich and Valley Forge reimbursement.

Finally, the parties expend considerable time and effort debating what doctrinal label best describes Colorado's rule permitting insurers to recoup their costs when they reserved the right to do so by letter. Is the rule best viewed as an equitable one, based on the fact that allowing an insured to retain the benefits of an unbargained-for defense would constitute unjust enrichment, as some courts elsewhere have suggested? *See, e.g.*, *Cincinnati Ins. Co. v. Grand Pointe, LLC*, 501 F. Supp.2d 1145, 1168-69 (E.D. Tenn. 2007). Or is the rule better viewed as a legal one, based on the fact that the insurer's reservation of rights letter and the insured's acceptance of the defense without objection created a new contract between the parties, or at least an implied-in-fact contract, as courts in other states have suggested? *See, e.g.*, *SST Fitness Corp.*, 309 F.3d at 919-21 (applying Ohio law). Or might the rule simply be a matter of Colorado public policy? Or something else still? *Hecla* and *Cotter* do not answer these questions. A future

case might.  But for our purposes, none of this matters.  Regardless whether the Colorado courts situate the rule in equity, contract, policy, rule of court, or someplace else — whatever doctrinal pigeonhole best fits — one thing is clear: Colorado permits insurers to recoup defense costs in the circumstances before us. We need not venture more than that to decide this case.  Judicial restraint, after all, usually means answering only the questions we must, not those we can.  *See PDK Labs., Inc. v. DEA*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring in part and concurring in the judgment) ("[I]f it is not necessary to decide more, it is necessary not to decide more.").

B

Having decided this much, one question in the O'Hara Defendants' appeal remains: *how much* can the insurers lawfully recoup under *Hecla* and *Cotter*'s rule?  Put differently, are they entitled to recover *all* of the defense costs they actually expended?  Or might the amount be limited in some way?  The O'Hara Defendants argue that Zurich and Valley Forge should, at most, be permitted to recover "reasonably and necessarily incurred" defense costs, Response and Reply Br. 36-37, or perhaps only the "fair value" of the defense provided, App. Vol. 11 at 2650.  Zurich and Valley Forge counter they are entitled to recoup everything they spent.  *See generally Century Sur. Co. v. 350 W.A., LLC*, No. 05-1548, 2008 WL 4402919, at *4-5 (S.D. Cal. Sept. 26, 2008) (unpublished) (discussing similar

challenge and holding that California law entitles insurer to recoup *all* defense costs, without a showing of reasonableness).

While *Hecla* and *Cotter* do not appear to address this question, at least squarely, its answer makes no difference to the outcome of the case before us and so (once again) we need not and will not decide it. Even assuming (without deciding) that the O'Hara Defendants are entitled to contest the reasonableness, or the fair value, of the expenses incurred in their defense, this case comes to us on summary judgment and, reviewing the record *de novo* as we must, we discern no genuine dispute of fact suggesting that the fees the insurers actually incurred in this case shouldn't be repaid.

The O'Hara Defendants seek to suggest otherwise by pointing to an affidavit submitted by their expert witness. Having considered that summary judgment affidavit *de novo*, however, we do not see how it raises any material dispute of fact. To be sure, a party can oppose summary judgment by submitting an affidavit that "set[s] out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). But the affidavit before us simply identifies various materials one might consider and questions one might ask when assessing the reasonableness of an attorney's bills. So, for example, the affidavit notes that Zurich and Valley Forge separated the O'Hara Defendants into different groups and appointed different attorneys for each group; the affidavit then proceeds to state that discovery could reveal whether work was duplicated. But the affidavit does not opine that any

work was actually and unreasonably duplicated, nor does it provide any facts to support such a conclusion. Most tellingly, in the final paragraph of the affidavit, the O'Hara Defendants' expert states that "the above described discovery must be undertaken *before* I will be able to . . . prepare an expert report setting forth my opinion as to the overall reasonableness and necessity of the fees charged." App. Vol. 11 at 2651 (emphasis added).[2]

Perhaps recognizing this infirmity, the O'Hara Defendants submit that their expert's affidavit, at the very least, complied with Fed. R. Civ. P. 56(f) and thus required the district court to defer decision on summary judgment to allow for the

---

[2] In their reply brief, the O'Hara Defendants argue for the first time that the declaration of Mr. Salazar, one of the individual defendants, creates a genuine issue of fact over the reasonableness of Zurich and Valley Forge's decision to engage three different law firms to represent the O'Hara Defendants. Reply Br. at 35. In that declaration, Mr. Salazar submits that he "believe[s] . . . a single lawyer could have represented all of the Defendants in the Underlying Action." Vol. 12 at 2680. Even assuming this argument hasn't been waived by its tardy appearance in these proceedings, *see Hill v. Kemp*, 478 F.3d 1236, 1250-51 (10th Cir. 2007), such a "conclusory and self-serving" affidavit is insufficient to create a factual dispute, *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991); *Murray v. City of Sapulpa*, 45 F.3d 1417, 1422 (10th Cir. 1995). On appeal, the O'Hara Defendants also assert that Mr. Salazar did not receive a copy of either Zurich's or Valley Forge's reservation of rights letter, and so argue he shouldn't be bound by them. Opening Br. at 44, 53. Though Mr. Salazar presented that fact to the district court, he didn't argue its purported legal consequence before that court, thus forfeiting the argument. And we decline to exercise our discretion to review that issue because the O'Hara Defendants do not suggest, and we do not see, how the error alleged "seriously affect[ed] the fairness, integrity or public reputation of [these] judicial proceedings." *Employers Reinsurance Corp. v. Mid-Continent Cas. Co.*, 358 F.3d 757, 769-70 (10th Cir. 2004) (quotation marks omitted) (describing plain error test).

discovery the expert sought. Zurich and Valley Forge disagree; the affidavit, they argue, did not comply with the requirements of Rule 56(f).

We review a district court's decision denying a Rule 56(f) discovery request for abuse of discretion. *Price ex rel. Price v. W. Res., Inc.*, 232 F.3d 779, 783 (10th Cir. 2000). As Judge Kane has noted, the abuse of discretion standard implies a degree of "[d]iscretion invested in judges [to render] a decision based upon what is fair in the circumstances and guided by the rules and principles of law." *In re Bueno*, 248 B.R. 581, 582 (D. Colo. 2000). And whatever decision we might've made ourselves were we behind the district court's bench, we can't say that the district court's decision to deny discovery in the face of the O'Hara Defendants' Rule 56(f) affidavit constituted such an abuse by "exceed[ing] the bounds of the rationally available choices given the facts and the applicable law in the case at hand." *Shook v. Bd. of County Comm'rs of County of El Paso*, 543 F.3d 597, 603 (10th Cir. 2008) (quotation omitted).

In this circuit, a party seeking to defer a ruling on summary judgment under Rule 56(f) must provide an affidavit "explain[ing] why facts precluding summary judgment cannot be presented." *Comm. for the First Amendment v. Campbell*, 962 F.2d 1517, 1522 (10th Cir. 1992) (citation omitted). This includes identifying (1) "the probable facts not available," (2) why those facts cannot be presented currently, (3) "what steps have been taken to obtain these facts," and (4) "how additional time will enable [the party] to" obtain those facts and rebut the motion

for summary judgment. *Id.; see also Price*, 232 F.3d at 783 ("Rule 56(f) does not operate automatically. Its protections . . . can be applied only if a party satisfies certain requirements.").

The affidavit before us falls short against this yardstick. The affidavit lists various additional materials and information the O'Hara Defendants seek. But the affidavit fails to identify what efforts the O'Hara Defendants had made already to obtain the information they sought, or why at least some of that information wasn't already available to them. The affidavit, for example, requests additional time to study the "nature and length of the professional relationship" between the O'Hara Defendants and the attorneys who represented them. App. Vol. 11 at 2651. And the affidavit seeks the engagement letters between the O'Hara Defendants and their retained counsel. Yet the affidavit makes no attempt to explain why the O'Hara Defendants lack this evidence or how they've tried but so far failed to obtain it.

The affidavit doesn't explain, for example, why the O'Hara Defendants were themselves unable to provide the expert with evidence about the nature and length of their relationship with their attorneys, or to supply copies of their engagement letters. Neither does it explain what, if anything, prevented the O'Hara Defendants from asking their defense attorneys, who owe them certain duties of communication and candor, to supply the information they sought. Though the O'Hara Defendants believe they could have unearthed persuasive evidence had the

district court granted their Rule 56(f) request, we simply cannot say in these circumstances that it was an abuse of discretion for the court to deny their request. *See*, *e.g.*, *Garcia v. U.S. Air Force*, 533 F.3d 1170, 1180 (10th Cir. 2008); *Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 732 (10th Cir. 2006).

### III

Having resolved the O'Hara Defendants' appeal, we still face Zurich and Valley Forge's cross-appeal. There, the insurers contend the district court erred as a matter of law when it denied their request for prejudgment interest on the amounts it awarded in reimbursement. Zurich and Valley Forge submit that Section 5-12-102(1) of the Colorado Revised Statutes expressly authorizes prejudgment interest in these circumstances. That section provides, in relevant part, that "creditors shall receive [prejudgment] interest" at eight percent "[w]hen money . . . has been wrongfully withheld." C.R.S. § 5-12-102(1). Because the O'Hara Defendants had no right to the defense funds expended on their behalf, Zurich and Valley Forge argue, the defense costs they (the insurers) spent were effectively and "wrongfully withheld" from them since the time those costs were incurred.

In support of their argument, Zurich and Valley Forge emphasize that money can be "wrongfully withheld," and so subject to prejudgment interest, even if the withholding party did nothing tortious or otherwise opprobrious in taking it. In this vein, the insurers point us to *Mesa Sand & Gravel Co. v. Landfill, Inc.*, where

the Colorado Supreme Court directed that Section 5-12-102(1) should be given a "liberal construction," and held that the phrase "wrongfully withheld" does not require proof of "tortious conduct" on the part of the withholding party. 776 P.2d 362, 364-66 (Colo. 1989). The insurers also rely on *Goodyear Tire & Rubber Co. v. Holmes*, where the Colorado Supreme Court clarified that "wrongfully withheld" means simply that "the aggrieved party lost or was deprived of something to which she was otherwise entitled." 193 P.3d 821, 825 (Colo. 2008). Finally, Zurich and Valley Forge draw our attention to the facts of *Rodgers v. Colorado Department of Human Services*. There, the Colorado Court of Appeals held that Section 5-12-102(1) entitled an employer to prejudgment interest on back pay and benefits it had paid to an employee pursuant to an administrative agency's order that was later reversed — thus requiring the employee to reimburse the employer. 39 P.3d 1232, 1238 (Colo. App. 2001). The court rejected the employee's argument that "he could not have been wrongfully withholding the money because he received" the back pay and benefits "pursuant to the [administrative agency's] order." *Id.* As the court reasoned, the employee had "demanded and received money from" his employer that a court ultimately held he "was never entitled to" "as a matter of law" and, thus, the employee had "been wrongfully withholding [that money] since the time he received it." *Id.*

We do not question that Zurich and Valley Forge's view, that Section 5-12-102 applies equally in the circumstances now before us, is at least a plausible

reading of the statute. But neither can we dispute that it lacks a meaningful rejoinder. The O'Hara Defendants point out that Zurich and Valley Forge have not cited us a single Colorado case that has awarded prejudgment interest to an insurer recovering defense costs. What's more, awarding prejudgment interest in such cases might, at least arguably, conflict with the rationale underlying the Colorado Supreme Court's *Hecla* and *Cotter* rule. Those cases, after all, impose on insurers a broad duty to defend in order to protect, even in questionable cases, an insured's "legitimate expectation of a defense." *Hecla*, 811 P.2d at 1090. As the *Hecla* court reasoned, "[r]equiring the average auto accident victim, or the average home owner to bear the onerous financial burden of proving that they are entitled to a defense from liability claims asserted against them would deny the insured the protection afforded by a liability policy." *Id.* at 1090 n.11. The reading of Section 5-12-102(1) that Zurich and Valley Forge urge on us would increase the costs to insureds of seeking the defense coverage *Hecla* and *Cotter* guarantee them. It would require an insured, when submitting a claim to his or her insurer, to assume the risk of having to repay not only any defense costs advanced but also eight percent interest on that money in the event a court later holds there was no duty to defend. This would, at least to a certain degree, disincentivize insureds from exercising their rights under *Hecla* and *Cotter*, and instead push them to shoulder their own defense costs. And that result is seemingly at odds with the purpose animating those cases — namely, the protection of an insured's

"reasonabl[e] expectat[ion] that he will not be required to furnish the cost of defending actions that facially fall within the terms of his policy." *Cotter*, 90 P.3d at 828. It is at least possible then, as the O'Hara Defendants stress, that prejudgment interest has not yet been awarded in a recoupment case like this one because Section 5-12-102(1) is inapplicable in light of *Hecla* and *Cotter*.

It is notable, too, that *Rodgers*, on which Zurich and Valley Forge heavily rely, may be distinguishable from this case – or at least arguably so. *Rodgers* dealt with an employer's payment of money to its employee pursuant to an administrative order that was later reversed, and the court's award of prejudgment interest was premised on the fact that the employee "was *never entitled* to" that money. 39 P.3d at 1238 (emphasis added). Here, by comparison, Zurich and Valley Forge made defense payments for the O'Hara Defendants pursuant to the Colorado Supreme Court's command in *Hecla* and *Cotter* that they provide a defense in the first instance. This command remains good law. One could argue, then, that the O'Hara Defendants *were entitled* to the defense payments under *Hecla* and *Cotter*, at least until the moment a court held there was no duty to defend.

In the absence of any Colorado authority applying Section 5-12-102(1) to an insurer's recoupment claim, and in light of the parties' plausible conflicting arguments about the statute's applicability, we are unable to conclude that the insurers have met their burden of establishing that Colorado law requires an award

of prejudgment interest in these circumstances.  This isn't to prejudge how the Colorado courts or legislature may decide the question.  It is to say only that, in these murky circumstances, "we believe it proper to leave any further development of [state] law on this point to" state authorities.  *Russo v. Ballard Med. Prods.*, 550 F.3d 1004, 1023 (10th Cir. 2008).

* * *

The judgment of the district court is

*Affirmed*.