*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0412P (6th Cir.)
File Name: 00a0412p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

M/G TRANSPORT SERVICES,
INC.,

     *Plaintiff-Appellant*,

     *v.*

WATER QUALITY INSURANCE
SYNDICATE,

     *Defendant-Appellee*.

No. 99-3889

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 97-00316—Susan J. Dlott, District Judge.

Argued: October 24, 2000

Decided and Filed: December 12, 2000

Before: KENNEDY, SUHRHEINRICH, and MOORE,
Circuit Judges.

———————————

**COUNSEL**

**ARGUED:** Todd M. Powers, SCHROEDER,
MAUNDRELL, BARBIERE & POWERS, Cincinnati, Ohio,
for Appellant. George W. Taliaferro, Jr., McKINNEY &
NAMEI, Cincinnati, Ohio, for Appellee. **ON BRIEF:** Todd

M. Powers, SCHROEDER, MAUNDRELL, BARBIERE & POWERS, Cincinnati, Ohio, for Appellant.  George W. Taliaferro, Jr., McKINNEY & NAMEI, Cincinnati, Ohio, Gary N. Levine, John M. Woods, THACHER, PROFFITT & WOOD, New York, New York, for Appellee.

————————

## OPINION

————————

SUHRHEINRICH, Circuit Judge.  Plaintiff M/G Transport Services, Inc. ("M/G"), appeals the grant of summary judgment to Defendant Water Quality Insurance Syndicate ("WQIS"), and the denial of summary judgment to M/G, in this action seeking a declaration that WQIS breached its duty under a marine insurance policy to defend and indemnify M/G in a *qui tam* action brought under the False Claims Act ("FCA"), 31 U.S.C. §§ 3729-33, as amended by the False Claims Amendments Act of 1986.  We **AFFIRM**.

### I.

M/G, a subcontractor for R. & F. Coal Co. ("R. & F."), transported coal via inland waterway to the Tennessee Valley Authority pursuant to a contract between R. & F. and the United States.  As a condition of the contract between R. & F. and the United States, by which M/G was bound, M/G was obligated to comply with the Federal Water Pollution Control Act ("Clean Water Act"), 33 U.S.C. §§ 1251-1387.

From 1986 through 1996, M/G purchased and renewed on an annual basis specialized marine pollution liability insurance from WQIS.  The terms, conditions, endorsements, and exclusions were initially governed by a document titled the "1976 Form."  From 1993 until 1996, coverage was governed by a document titled the "1992 Form."

On December 23, 1993, Paul Byus and other former M/G employees filed a complaint ("the Byus Complaint") against

M/G under the FCA.  The Byus Complaint asserted two claims: (1) the first pursuant to 31 U.S.C. § 3729(a)(2), alleging that M/G had knowingly falsified records to hide violations of the Clean Water Act so that it could obtain payment from the United States; and (2) the second pursuant to 31 U.S.C. § 3729(a)(7), the "reverse" false claims provision, alleging that M/G had knowingly falsified records to conceal, avoid, or decrease an obligation to pay money to the United States for fines or clean-up costs.[1]

M/G notified WQIS of the Byus Complaint, and requested indemnity coverage and a defense to the suit.  WQIS refused to provide either.  In June 1996, M/G settled the Byus action for approximately $4.5 million.  WQIS did not participate in the settlement conference, nor provide any portion of the settlement.  WQIS also refused to reimburse M/G for its costs in defending the action.

Although the United States did not assume control of the Byus Complaint,[2] it did commence a criminal investigation and prosecution for the underlying Clean Water Act violations.  In October 1997, M/G was convicted of violating and conspiring to violate the Clean Water Act.

In April 1997, M/G commenced this action against WQIS.  In a three paragraph opinion, the district court in this case granted WQIS' motion for summary judgment, adopting the reasoning of *McGinnis, Inc. v. Water Quality Ins. Syndicate*,

---

[1] We need not decide here whether such a reverse false claim remains viable in this Circuit.  *See American Textile Mfrs. Inst., Inc. v. The Limited, Inc.*, 190 F.3d 729, 734 (6th Cir. 1999) (rejecting, in *dictum*, the possibility of a reverse false claim action where a defendant has omitted to disclose information to the Government that concealed or avoided its obligation to pay cleanup costs for its discharges and the associated fines for intentional dumping).

[2] Under 31 U.S.C. § 3730(b)(4)(A)-(B), the Government may take control of a private action under the FCA within sixty days from when the complaint is filed.

No. C-1-97-6 (S.D. Ohio, Feb. 3, 1998), which was a *qui tam* action brought under the FCA by the same attorneys responsible for the Byus Complaint, involving the same 1976 and 1992 insurance policy forms at issue here. In *McGinnis*, the court reasoned that neither policy obligated WQIS to defend or indemnify the plaintiffs because the underlying complaint simply did not assert a Clean Water Act violation, and because the 1992 form excluded intentional conduct, which had been pleaded in connection with the FCA violations. The *McGinnis* court thus granted summary judgment for WQIS.

M/G argues that there is a genuine issue of material fact concerning whether (1) WQIS had a duty to defend because the Byus Complaint arguably stated a covered claim, and (2) WQIS should indemnify M/G because the settlement was "by reason of or with respect to" liability to the United States under the Clean Water Act, § 311(f)(1), (f)(4), and (g). In addition, M/G argues that the district court should have granted its motion for summary judgment.

## II.

The district court exercised admiralty jurisdiction over M/G's complaint pursuant to 28 U.S.C. § 1333. *See Stanley T. Scott & Co., Inc. v. Makah Dev. Corp.*, 496 F.2d 525, 526 (9th Cir. 1974) (holding that a marine insurance policy is a "maritime contract" for purpose of admiralty jurisdiction). This court has jurisdiction from the final order of the district court under 28 U.S.C. § 1291.

## III.

We review the grant of summary judgment *de novo*, guided by the same principles as the district court. *See Rowley v. United States*, 76 F.3d 796, 799 (6th Cir. 1996). A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby,*

of the underlying settlement demonstrates that M/G's ultimate liability under the Byus Complaint was for anything other than violations of the FCA, which we have concluded are not covered by the policies. Thus, we conclude that WQIS has no duty to indemnify M/G. We affirm the district court on this issue.

### B.

Finally, M/G argues that it was entitled to summary judgment. Because we conclude that WQIS was entitled to summary judgment, we need not consider M/G's request.

## IV.

Therefore, we **AFFIRM** the judgment of the district court.

emission, spillage or leakage, and expressly excluded fines, penalties and punitive damages.

M/G's argument is unpersuasive. An element of a claim under the FCA is that false claims were "knowingly" made. *See* 31 U.S.C. § 3729(a)(2). The Byus Complaint clearly alleged that M/G had a "policy and regular practice" of dumping pollutants into waterways. It is not possible to construe this language as alleging "sudden and accidental" or "sudden and unintentional" pollution within the coverage of either policy. Nor, for that matter, is it possible for M/G to avoid the 1976 Form exclusion for "willful negligence or willful misconduct."

Finally, Ohio law provides that where, as here, a policy does not obligate an insurer to defend against frivolous claims, a court may consider events outside the pleadings to determine the duty to defend. *See Preferred Risk Ins. Co. v. Gill*, 507 N.E.2d 1118, 1124 (Ohio 1987). Here, M/G was convicted of conspiring to commit a crime against the United States by knowingly discharging pollutants in violation of the Clean Water Act. This state of mind is inconsistent with any inadvertent, negligent, or accidental behavior.

Therefore, we conclude that the Byus Complaint stated claims under the FCA exclusively, and that it was not so vague, ambiguous, nebulous or incomplete as to obligate WQIS to provide a defense under either policy form.

### 2.

M/G contends that WQIS, in addition to a duty to defend, has a duty to indemnify M/G for the $4.5 million settlement. Under Ohio law, an insurer's duty to indemnify is separate and distinct from its duty to defend. *See Lessak v. Metropolitan Cas. Ins. Co. of New York*, 151 N.E.2d 730, 733 (Ohio 1958). "The duty to indemnify is based on whether there is, in fact, liability under the policy." *Chemstress Consultant Co. v. Cincinnati Ins. Co.*, 715 N.E.2d 208, 212 (Ohio Ct. App. 1998). Nothing in the terms or circumstances

*Inc.*, 477 U.S. 242, 247-48 (1986)*; Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

### A.

M/G argues that there is a genuine issue of material fact concerning whether WQIS had a duty to defend and indemnify M/G under the policies.[3] The parties agree that Ohio law governs the substantive aspects of this dispute. *See Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 320 (1955) (holding that in the absence of controlling federal maritime law principles, state law determines an insurer's duties and responsibilities). Because an insurer's duty to defend is generally broader than its duty to indemnify, we will first determine whether WQIS had a duty to defend M/G in the Byus action.

### 1.

Under Ohio law, whether an insurer has a duty to defend an action against an insured is initially determined by the scope of the pleadings. *See City of Willoughby Hills v. Cincinnati Ins. Co.*, 459 N.E.2d 555, 558 (Ohio 1984). The duty of the insurer to accept the defense of a claim attaches whenever the complaint states a covered claim, or *potentially or arguably* does so. *See id*. In other words, where the insurer's duty to defend is not apparent from the pleadings, no duty to defend exists unless the complaint is "vague, ambiguous, nebulous or incomplete" so that a "potential for coverage" exists. *See Zanco, Inc. v. Michigan Mut. Ins. Co.*, 464 N.E.2d 513, 514 (Ohio 1984) (finding no duty to defend where an exclusion placed the claim beyond the policy's scope). When making this determination, "insurance contracts must be examined in their entirety." *Id.* at 514-15.

---

[3] Because the Byus Complaint alleged an ongoing pattern or policy of pollution rather than specific dates on which the pollution allegedly occurred, both the 1976 and 1992 forms are implicated.

First, M/G argues that the Byus Complaint states a claim that is at least potentially or arguably covered under the plain language of Section A in the 1976 Form.[4] M/G emphasizes that Section A covers any amounts paid "by reason of or with respect to" liability to the United States of America under § 311(f)(1) or § 311(g) of the Clean Water Act for costs incurred under § 311(c) of the Act.[5] Specifically, M/G contends that its liability under the Byus Complaint falls within the policy language because an FCA *qui tam* action is brought on behalf of the United States, and because proof of a Clean Water Act violation is a predicate to establishing that any claim submitted to the United States by M/G was false.

M/G's argument fails because the Byus Complaint does not state a claim for liability that is by reason of, or with respect

---

[4]Section A of the 1976 Form, as it applied to M/G, provides, in pertinent part:

> In consideration of the premium set forth for SECTION A on the Declarations page hereof, and subject to all of the terms, conditions and limitations contained herein, the Insurers do hereby agree to indemnify the Assured for such amounts as the Assured shall, as owner or operator of the said Vessel, have become liable to pay and shall pay, by reason of or with respect to:
>
> > FIRST: Liability to the United States of America under Section 311(f)(1) or Section 311(g) of the Federal Water Pollution Control Act Amendments of 1972 (Public Law 92-500) (hereinafter called "the Act") for costs incurred under Section 311(c) of the Act, and costs incurred under § 311(f)(4) of the Act.

[5]Section 311(c) of the Act, 33 U.S.C. § 1321(c), authorizes the United States to clean a polluted marine environment. Section 311(f)(1), 33 U.S.C. § 1321(f)(1), provides a mechanism by which the government may recover its actual cleanup costs from a responsible party. Section 311(g), 33 U.S.C. § 1321(g), provides that an owner or operator of a vessel who violates § 311(c), but who alleges that the violation was caused by a third party, must pay the United States' actual cleanup costs, and is thereby subrogated to the rights of the United States.

to, liability under the Clean Water Act. Nor is the Byus Complaint vague, ambiguous, nebulous or incomplete such that it potentially does so. First, the statement of jurisdiction contained in the Byus Complaint is based solely on the FCA. Second, the Byus Complaint states only two counts, both exclusively under the FCA. Third, the settlement agreement arising from the Byus Complaint expressly reserved potential Clean Water Act liability for the United States. Fourth, the Clean Water Act does not contain a *qui tam* provision authorizing private parties to sue for the government's cleanup costs. Fifth, nothing in the record suggests that the United States even incurred cleanup costs as a result of M/G's actions. In short, M/G's arguments are thinly disguised attempts to bootstrap liability for FCA violations into the coverage provided by the environmental pollution policies. Under these circumstances, we cannot conclude that M/G's liability under the Byus Complaint was by reason of, or with respect to, liability to the United States for cleanup costs under the Clean Water Act. An FCA action is not converted into a Clean Water Act action simply because a violation of the Clean Water Act is a predicate to establishing the falsity of a claim, or may be used as a measure of damages under the FCA.

Second, M/G contends that language contained in both Section B of the 1976 Form, as well as in the 1992 Form, obligated WQIS to provide a defense. Section B of the 1976 Form provided indemnity and defense costs for "such amounts as the Assured . . . shall pay, in consequence of the sudden and accidental discharge, emission, spillage or leakage upon or into the seas, waters, land or air, of oil, petroleum products, chemicals or other substances of any kind or nature whatsoever." The 1976 Form expressly excluded any loss, damage, cost, liability or expense arising solely out of "willful negligence or willful misconduct within the privity or knowledge of the Assured" and any loss "for fines, penalties or punitive or exemplary damages." Similarly, the 1992 Form applied only to "sudden and unintentional" discharge,