NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0098n.06

No. 20-1344

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 22, 2021
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| BORGWARNER THERMAL SYSTEMS, INC., ) | |
| ) | |
| Plaintiff-Appellee, ) | |
| ) | |
| v. ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| ) | |
| CARLISLE BRAKE & FRICTION, INC., ) | |
| ) | |
| Defendant-Appellant. ) | |
| ) | |

BEFORE: COOK, GRIFFIN, and LARSEN, Circuit Judges.

GRIFFIN, Circuit Judge.

Plaintiff BorgWarner Thermal Systems contends defendant Carlisle Brake & Friction breached its contractual obligations when it failed to comply with a transition-of-supply provision contained in BorgWarner's Terms and Conditions. The district court agreed, entered summary judgment in BorgWarner's favor, and awarded $585,127.94 in damages. We affirm.

I.

BorgWarner and Carlisle are parts suppliers. In 2015, they entered into an agreement for Carlisle to supply friction liners to BorgWarner's Cadillac, Michigan plant at certain prices. These terms were printed on a standard BorgWarner "Purchase Order." The parties dispute what obligations Carlisle had to BorgWarner after the contract expired in April 2018. BorgWarner claims Carlisle was required to continue filling orders at the agreed prices for a "reasonable" time until BorgWarner could secure an alternate supplier; Carlisle responds that it had no such

obligation and could charge a different price. Resolving this dispute centers on which, if any, of the parties' standard terms and conditions are part of the contract.

During negotiations, the parties wanted their own respective terms and conditions to apply. This was a non-starter for BorgWarner—"it repeatedly and in writing expressed to Carlisle [that this was] non-negotiable." Eventually, however, Carlisle "decided to just not push . . . anymore, and . . . sign[ed] the [Purchase Order] as it was written." Carlisle's negotiator testified that Carlisle still "disagree[d]" with the application of BorgWarner's Terms and Conditions, and that if any issue arose, "the lawyers could work [it] out later." But Carlisle also admitted in district court both that the Purchase Order "became the contract" when its Vice President of Finance approved it internally on July 28, 2015, and that it "also indicated its acceptance by immediately shipping parts."

The Purchase Order provided it was "governed by and subject to BorgWarner Purchase Order Terms and Conditions" and that "[a]ny other different or additional terms proposed by Supplier are expressly rejected, unless separately agreed to in writing by BorgWarner." Section 12 of those Terms and Conditions, in turn, mandates that "[i]n connection with the expiration, cancellation or termination of the Purchase Order," the seller of goods, here Carlisle, must "cooperate in the transition of supply." In BorgWarner's view, this obligated Carlisle to "continue production and delivery of all goods and services . . . at the prices and in compliance with the terms of the Purchase Order . . . during the entire period reasonably needed by [BorgWarner] to complete the transition to the alternate supplier(s)."

Carlisle acknowledges this, but claims that when it shipped the friction liners, it included its own terms and conditions on invoices. And Carlisle's Terms and Conditions do not contain any post-contract, transition-of-supply language. Rather, they just provide that "[u]nless otherwise

set forth in the Sale Documents, the price for the products or services shall be Seller's price in effect on the date of shipment."

The parties operated under these terms for the duration of the contract without issue, with Carlisle regularly shipping its friction liners upon receipt of BorgWarner's daily orders. And Carlisle continued to process orders after the contract's April 30, 2018 termination date. But that changed in the summer of 2018, when Carlisle determined that it had economic and environmental concerns with continuing to fill BorgWarner's orders. The parties met on July 30, 2018, at which time Carlisle told BorgWarner that it was "in the best interest of both parties to discontinue the manufacturing of these parts." Carlisle offered to continue providing the friction liners at a substantially increased price for a six-month period. BorgWarner eventually, and reluctantly, agreed, but reserved its right to recoup its losses. And in the meantime, it worked to successfully secure a new supplier in about nine months. Carlisle stopped supplying its friction liners to BorgWarner in May 2019.

This breach-of-contract action originally began as one for injunctive relief, with BorgWarner requesting in September 2018 that the district court order Carlisle to continue to perform its obligations under the 2015 agreement. BorgWarner subsequently withdrew that request, and the district court ultimately resolved BorgWarner's claims (and Carlisle's counterclaims) on the merits at summary judgment. It found BorgWarner was entitled to summary judgment in its favor on its breach of contract and declaratory judgment counts, concluding that "the parties' contract required Carlisle to continue to supply the Friction Liners to [BorgWarner], under the prices set forth in the Purchase Order, until [BorgWarner] could reasonably secure a new supplier, and that [BorgWarner] is entitled to damages in the amount of $585,127.94." And it

summarily entered summary judgment in BorgWarner's favor on Carlisle's contract-based counterclaims. Carlisle timely appeals.

## II.

This is an appeal from the district court's resolution of the parties' cross-motions for summary judgment. Our standard of review "does not differ from the standard applied when a motion is filed by only one party to the litigation." *Ferro Corp. v. Cookson Grp.*, 585 F.3d 946, 949 (6th Cir. 2009). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The moving party bears the burden of showing that no genuine issues of material fact exist." *Rafferty v. Trumbull County*, 915 F.3d 1087, 1093 (6th Cir. 2019). All reasonable inferences will be drawn in favor of the non-moving party. *Mutchler v. Dunlap Mem'l Hosp.*, 485 F.3d 854, 857 (6th Cir. 2007). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

## III.

Carlisle contends the district court wrongly entered summary judgment in BorgWarner's favor for three reasons: (1) BorgWarner's Terms and Conditions are not part of the contract because M.C.L. § 440.2207's "knock-out" provision voids them as conflicting with Carlisle's Terms and Conditions; (2) the plain language of Section 12 means it does not apply in this instance; and (3) BorgWarner did not act with reasonable care to secure an alternate parts supplier. We address each in turn.

A.

Under Michigan law, a seller of goods may accept a buyer's purchase offer by stating additional or different terms from those offered or agreed upon. M.C.L. § 440.2207(1). "Different" terms cancel each other out; "additional" terms become part of the contract if none of the statutory exceptions apply and the parties are merchants. § 2207(2); *Challenge Mach. Co. v. Mattison Mach. Works*, 359 N.W.2d 232, 236–37 (Mich. Ct. App. 1984) (per curiam) (distinguishing between "additional" and "different" terms and discussing why the latter cancel out but the former are subject to exceptions).

Carlisle claims that it manifested its assent to BorgWarner's Purchase Order by contemporaneously issuing invoices that contained its own terms and conditions, which are "different" from BorgWarner's with respect to post-termination obligations, therefore triggering application of the knock-out rule. So it contends the district court erred by holding that Carlisle agreed only to BorgWarner's Terms through its acceptance of the Purchase Order and shipment of parts under it, and by holding that Carlisle's Terms were "additional" and thus excluded under § 2207(2)'s first and third exceptions.

The problem with this contention, however, is one of Carlisle's own making. This is not a legal position Carlisle pressed in the district court. Below, Carlisle did not cite, let alone discuss, § 2207(1). We acknowledge it generically referenced § 2207's broader battle-of-the-forms principles and its position that it sent its Terms and Conditions to BorgWarner, but nowhere do we see an articulated argument about § 2207(1)'s applicability. Our caselaw is filled with instances of finding forfeited arguments raised for the first time on appeal, including those not raised in response to dispositive motions. *See, e.g.*, *Swanigan v. FCA US LLC*, 938 F.3d 779, 786 (6th Cir. 2019). We follow that well-worn caselaw here.

The same can be said for Carlisle's criticism that the district court improperly broadened the scope of § 2207(2) by applying it to what Carlisle says are "different" terms when the plain language of § 2207(2) regulates only "additional" terms. To be sure, this position appears to have support in Michigan caselaw. *See Challenge Mach. Co.*, 359 N.W.2d at 236–37. But this is yet another argument raised for the first time on appeal by Carlisle. When BorgWarner moved for summary judgment, it advocated for application of § 2207(2)'s exceptions. In response, Carlisle offered the following one-paragraph argument:

> [A] battle of the forms issue is afoot since BW's Terms & Conditions and CBF's Terms and Conditions provide materially different language about the price of the Friction Liners for the time period at issue in the parties' dispositive Motions. MCL 440.2207. Pursuant to MCL 440.2207(3), these conflicting terms regarding price preclude this Court from applying only BW's self-serving Terms & Conditions.

Carlisle says by citing the knock-out provision (§ 2207(3)), it raised this argument below. We disagree. Carlisle did not respond to BorgWarner's position that subsection (2)'s exceptions should apply, and more importantly, its citation gave the district court no argument for why the provisions were "different" and not "additional."

And even if we did not find this argument forfeited and were to agree that the district court erred in characterizing Carlisle's Terms as "additional" instead of "different," Carlisle still has another problem. Carlisle's admission that it formed the contract before shipping the goods, as discussed above, means it could not subsequently alter that contract in the manner it suggests. This admission means that Carlisle must have accepted the purchase order without reservation. It has long been established law that "a party who has entered into an agreement cannot change" those portions of the contract already agreed-upon "by the simple expedient of sending a written 'confirmation' containing additional or different terms[.]" *See Am. Parts Co. v. Am. Arbitration*

*Ass'n*, 154 N.W.2d 5, 15 (Mich. Ct. App. 1967); *see also Power Press Sales Co. v. MSI Battle Creek Stamping*, 604 N.W.2d 772, 777 (Mich. Ct. App. 1999).

We therefore agree with BorgWarner that forfeiture forecloses Carlisle's attack on the district court's judgment with respect to contract formation and the battle of the forms. *See Swanigan*, 938 F.3d at 786. And we decline to exercise our discretion to set it aside. *See Thomas M. Cooley Law School v. Kurzon Strauss, LLP*, 759 F.3d 522, 528 (6th Cir. 2014) (explaining that we will exercise our discretion to entertain issues not raised only in exceptional cases or when application of the forfeiture rule produces a plain miscarriage of justice).

B.

We move next to Carlisle's alternative argument that Section 12's plain text precludes imposition of post-contract-termination obligations. It focuses on three phrases within Section 12:

> In connection with the expiration, cancellation or termination of the Purchase Order by either Buyer or Seller, in whole or in part, for any or no cause . . . , Seller will cooperate in the transition of supply. Seller will continue production and delivery of all goods and services as ordered by Buyer, at the prices and in compliance with the terms of the Purchase Order, without premium or other condition, during the entire period reasonably needed by Buyer to complete the transition to the alternate supplier(s).

(Emphases added). In Carlisle's view, these phrases demonstrate why Section 12 does not apply because: (a) "[t]he transition of supply in this case was *not* connected with the expiration of the Purchase Order, because no attempt to transition the supply was made until *after* the Purchase Order, by its plain terms, had *already* expired"; (b) "unlike a life-of-the-program agreement, which is what BorgWarner's terms and conditions were generally intended to cover, here, operating 'in compliance with the terms of the Purchase Order' dictates that the Purchase Order had *already* expired, and was thus inapplicable"; and (c) "it was not reasonable for BorgWarner to wait until months after the Purchase Order expired—when Carlisle notified BorgWarner that it was going to

exit the Friction Liner business—to start looking to transition its supply." (Record citations omitted). Because the district court "did not engage in any careful analysis of § 12's text," Carlisle requests we reverse and remand for judgment in its favor.

But there is good reason not to fault the district court for failing to pick apart Section 12 in the manner suggested by Carlisle—it never told the district court to do so in response to BorgWarner's motion for summary judgment. Here is Carlisle's fleeting argument on this issue in the district court:

> In the event this Court . . . applies BW's Terms & Conditions in their entirety, Carlisle still would not have to maintain the same prices for the Friction Liners (again, causing dramatic losses for Carlisle) since Section 12 of BW's Terms & Conditions require[s] Carlisle to maintain prices only as existing in the PO 1 (which itself expired by its express unambiguous termination date). In other words, the language within Section 12 of BW's Terms & Conditions means there is absolutely no circumstance wherein the Court can apply the pricing terms reflected in PO #1 to the time period at issue in the parties' dispositive Motions (which is after October 9, 2018).

(Record citations and emphasis omitted). Noticeably absent is the type of detailed textual analysis that Carlisle now says the district court should have performed—meaning that this issue is also forfeited. *See Swanigan*, 938 F.3d at 786.

## C.

The final issue on appeal deals with BorgWarner's procurement of an alternate supplier for the friction liners. Recall Section 12 mandates that a seller continue to provide BorgWarner with parts at the same prices "during the entire period reasonably needed by [BorgWarner] to complete the transition to the alternate supplier(s)." BorgWarner emphasized below that securing a new supplier typically takes a year or more, that it started looking after the July 2018 meeting, and that it located one nine months later. On this evidence, the district court concluded "there is no genuine

issue of material fact as to whether the nine months that it took BW to obtain an alternate supplier for the Friction Liners was reasonable."

Carlisle claims on appeal that this was error because a factfinder could have found that Carlisle's six-month transition proposal was reasonable (instead of the nine months), and that BorgWarner unreasonably waited to begin searching for a new supplier. But forfeiture, again, dooms this assignment of error. As the district court commented, "Carlisle's briefs do not dispute that the nine month period was reasonable. Moreover, Carlisle has not offered any evidence that could establish that the nine month period was unreasonable." And in response to the district court pressing Carlisle on the reasonableness of BorgWarner's actions, Carlisle's attorney responded that he had "no position . . . on that issue. I don't know if it was reasonable or not. . . . We did not litigate that issue[.]" In sum, BorgWarner offered material facts supporting its contention that it acted with reasonable care to secure a new supplier, so it then became Carlisle's burden to show a fact dispute on this issue to get to trial. *See Anderson*, 477 U.S. at 250. It answered with silence. Having failed to substantively respond to BorgWarner's motion on this issue once again means Carlisle has forfeited its opportunity to present that issue to us on appeal. *See Swanigan*, 938 F.3d at 786.

IV.

For these reasons, we affirm the district court's judgment.